John P. Kristensen (SBN 224132)
**KRISTENSEN LLP**
12450 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone:  (310) 507-7924
Facsimile:   (310) 507-7906
*john@kristensenlaw.com*

Todd M. Friedman (SBN 216752)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard Street, Suite 780
Woodland Hills, California 91367
Telephone: (877) 619-8966
Facsimile:  (866) 633-0028
*tfriedman@toddflaw.com*
**Attorneys for Plaintiffs and all others
similarly situated**

Christopher W. Wood (SBN 193955)
**DREYER BABICH BUCCOLA
WOOD CAMPORA, LLP**
20 Bicentennial Circle
Sacramento, California 95826
Telephone: (916) 379-3500
Facsimile:  (916) 379-3599
*cwood@dbbwc.com*

# THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| PAUL GUZMAN and JEREMY ALBRIGHT, individually on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> POLARIS INDUSTRIES, INC., a Delaware corporation; POLARIS SALES, INC., a Minnesota corporation; POLARIS INDUSTRIES, INC., a Minnesota corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.: 8:19-cv-01543-JLS-KES <br><br> **CLASS ACTION** <br><br> **SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** <br><br> **(1)  Violation of the California Consumer Legal Remedies Act;** <br> **(2)  Violation of the California Unfair Competition Law; and** <br> (3)  **Violation of California False Advertising Law.** <br><br><br> **DEMAND FOR JURY TRIAL** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

PLAINTIFFS' COMPLAINT ........................................................................ 1

I.     NATURE OF THE ACTION ................................................................. 1

II.    UTVs SOLD BY POLARIS ................................................................. 5

III.   JURISDICTION AND VENUE ............................................................. 6

IV.    PARTIES ............................................................................................. 7

V.     FACTUAL ALLEGATIONS ................................................................. 9

       A. *The Government Considers Regulations for UTVs* ................... 9

       B. *The 1970s OSHA Regulation for ROPS on Farm Tractors* ............... 10

       C. *ROHVA, a Polaris-Controlled Entity, Adopts the 29 C.F.R. §
          1928.53 Test* ............................................................................. 11

       D. *Polaris Cheats and None of the Class Vehicles Passes the 29
          C.F.R. § 1928.53 Test* ............................................................. 11

       E. *Plaintiffs' Transactions* .......................................................... 12

VI.    CLASS ALLEGATIONS ..................................................................... 15

VII.   CAUSES OF ACTION ....................................................................... 21

       FIRST CAUSE OF ACTION
       Violation of the California Consumer Legal Remedies Act
       By Plaintiff Paul Guzman and the Class Against All Defendants ........ 21

       SECOND CAUSE OF ACTION
       Violation of the California Unfair Competition Law
       By All Plaintiffs and the Class Against All Defendants ......................... 24

       THIRD CAUSE OF ACTION
       Violation of the California False Advertising Law
       By Plaintiff Paul Guzman and the Class Against All Defendants ........ 29

PRAYER FOR RELIEF ............................................................................. 32

DEMAND FOR JURY TRIAL ................................................................... 33

1        Plaintiffs PAUL GUZMAN and JEREMY ALBRIGHT (collectively,

2   "Plaintiffs"), individually and on behalf of all other similarly situated, allege the

3   following upon information and belief, based upon investigation of counsel,

4   published reports, and personal knowledge:

5   **I.    NATURE OF THE ACTION**

6        1.    Plaintiffs bring this action against defendants POLARIS

7   INDUSTRIES, INC. (the Delaware corporation), POLARIS SALES, INC.,

8   POLARIS INDUSTRIES, INC. (the Minnesota corporation and parent

9   corporation of the other two Polaris defendants) (collectively, "Defendants" or

10   "Polaris") on behalf of all persons who purchased in California in the four years

11   preceding this Complaint Polaris Utility Terrain Vehicles ("UTV") (they are also

12   called side by sides) that Polaris claimed/advertised/marked/certified that the

13   vehicles' rollover protection system ("ROPS") complied with the department of

14   Occupational Safety and Health Administration ("OSHA")

15   requirements/standards of 29 C.F.R. § 1928.53 (which is for agricultural tractors).

16        2.    "Class Vehicles" is defined to include, but are not limited to the

17   following models: Polaris RZR XP 4 Turbo S; Polaris RZR XP 4 Turbo EPS,

18   Polaris RZR PRO XP Ultimate, Polaris RZR XP Turbo S; Polaris RZR XP Turbo

19   EPS; Polaris RZR XP 4 1000 High Lifter; Polaris RZR XP 4 Turbo S Velocity;

20   Polaris RZR PRO XP Premium; Polaris RZR XP 4 1000 Premium; Polaris RZR

21   XP 4 Turbo; Polaris RZR XP 4 Turbo Dynamix Edition; Polaris RZR XP 4 Turbo

22   Fox Edition; Polaris RZR XP 1000 Trails & Rocks; Polaris RZR PRO XP; Polaris

23   XP Turbo S Velocity; Polaris RZR XP 4 1000 Limited Edition; Polaris RZR XP 4

24   1000 EPS; Polaris RZR XP 4 1000 Ride Command; Polaris RZR XP 1000 EPS

25   High Lifter; Polaris RZR XP 1000 High Lifter; Polaris RZR XP 1000 EPS;

26   Polaris RZR XP 1000 EPS LE; Polaris RZR XP 1000 Ride Command; Polaris

27   RZR XP 4 1000; Polaris RZR XP Turbo; Polaris RZR XP Turbo Fox Edition;

28   Polaris RZR XP Turbo Dynamix Edition; Polaris RZR XP Turbo S; Polaris RZR

XP 1000 Premium; Polaris RZR 4 1000; Polaris RZR XP 1000 Limited Edition; Polaris RZR XP 1000; Polaris RZR S 1000; Polaris RZR S 1000 EPS; Polaris RZR S 900 Premium; Polaris RZR 900 Fox Edition; Polaris RZR S 900; Polaris RZR S 900 EPS; Polaris RZR S4 900 EPS; Polaris RZR 900 Premium; Polaris RZR RS1; Polaris RZR 900; Polaris RZR 4 900 EPS LE; Polaris RZR 4 900 EPS; Polaris RZR 900 EPS Trail; Polaris RZR 900 EPS; Polaris RZR 900 EPS XC Edition; Polaris RZR 900 Polaris; Polaris RZR 4 800 EPS LE; Polaris RZR 4 800 EPS; Polaris RZR S 800 EPS; Polaris RZR S 800 LE; Polaris RZR S 800; Polaris RZR 800 EPS LE; Polaris RZR 800 EPS XC Edition; Polaris RZR 800 Polaris Pursuit; Polaris RZR 800; Polaris RZR 570 Premium; Polaris RZR 570 EPS Trail LE; Polaris RZR 570 EPS Trail; Polaris RZR 570 EPS LE; Polaris RZR 570 EPS; Polaris RZR 570; Polaris RZR S 570 570 EPS; Polaris RZR 170 EFI; Polaris RZR Turbo EPS; Polaris Ranger Crew XP 1000 EPS NorthStar Edition; Polaris Ranger XP 1000 NorthStar Edition; Polaris Ranger Crew XP 1000 EPS NorthStar HVAC Edition; Polaris Ranger XP 1000 EPS NorthStar HVAC Edition ; Polaris Ranger XP 1000 EPS NorthStar Edition; Polaris Ranger Crew XP 1000 High Lifter Edition; Polaris Ranger XP 1000 High Lifter Edition; Polaris Ranger Crew XP 1000 EPS High Lifter Edition; Polaris Ranger XP 1000 EPS High Lifter Edition; Polaris Ranger Crew XP 1000 EPS Back Country Edition; Polaris Ranger XP 1000 EPS Back Country Limited Edition; Polaris Ranger Crew XP 1000 EPS 20th Anniversary Limited Edition; Polaris Ranger XP 1000 EPS 20th Anniversary Limited Edition; Polaris Ranger Crew XP 1000 Texas Edition; Polaris Ranger XP 1000 Texas Edition; Polaris Ranger Crew XP 1000 Premium; Polaris Ranger Crew XP 1000 EPS Premium; Polaris Ranger XP 1000 Premium; Polaris Ranger Crew XP 1000 EPS; Polaris Ranger XP 1000 EPS; Polaris Ranger XP 1000 EPS Ranch Edition; Polaris Ranger XP 1000 EPS Hunter Edition; Polaris Ranger XP 1000; Polaris Ranger Crew XP 900 EPS; Polaris Ranger XP 900 EPS; Polaris Ranger XP 900 EPS Premium; Polaris Ranger Crew XP 900; Polaris Ranger XP

900; Polaris Ranger Crew XP 900-6 EPS; Polaris Ranger Crew XP 900-6; Polaris Ranger Crew XP 900-5 EPS; Polaris Ranger Crew XO 900-5; Polaris Ranger XP 900; Polaris Ranger XP 900 EPS; Polaris Ranger XP 900 EPS High Lifter Edition; Polaris Ranger XP 900 EPS Hunter Deluxe Edition; Polaris Ranger XP 900 EPS Hunter Edition; Polaris Ranger XP 900 EPS NorthStar Edition; Polaris Ranger XP 900 EPS Trail Edition; Polaris Ranger XP 900 EPS LE; Polaris Ranger XP 900 EPS Browning LE; Polaris Ranger XP 900 Deluxe; Polaris Ranger XP 570 EPS; Polaris Ranger XP 570; Polaris Ranger Crew 1000 Premium; Polaris Ranger 1000 Premium; Polaris Ranger Crew 1000; Polaris Ranger 1000 EPS; Polaris Ranger 1000; Polaris Ranger Crew 900 EPS; Polaris Ranger Crew 900 EPS LE; Polaris Ranger Crew 900; Polaris Ranger Crew 900-6 EPS; Polaris Ranger Crew 900-6; Polaris Ranger 800 EFI; Polaris Ranger 800 Midsize; Polaris Ranger 800 EPS LE; Polaris Ranger Crew 800 EPS; Polaris Ranger Crew 800; Polaris Ranger 800 EPS; Polaris Ranger Crew 570-6; Polaris Ranger Crew 570-4 Premium; Polaris Ranger Crew 570-4 EPS; Polaris Ranger Crew 570-4; Polaris Ranger Crew 570 EPS; Polaris Ranger Crew 570 EPS LE; Polaris Ranger Crew EPS 570 Full-Size; Polaris Ranger 570 EPS; Polaris Ranger 570 EPS Hunter Edition; Polaris Ranger Crew 570 EFI; Polaris Ranger 570 EFI; Polaris Ranger Crew 570 Full-Size; Polaris Ranger 570 Full-Size; Polaris Ranger Crew 570; Polaris Ranger 570; Polaris Ranger 500; Polaris Ranger 400; Polaris Ranger 150 EFI; Polaris Ranger 6X6; Polaris Ranger Diesel HST Deluxe; Polaris Ranger Diesel HST; Polaris Ranger Crew Diesel; Polaris Ranger Diesel; Polaris Ranger EV; Polaris Ranger EV LI-ION; Polaris Ranger ETX; Polaris General 4 1000 EPS Deluxe; Polaris General 4 1000; Polaris General 4 1000 EPS; Polaris General 4 1000 Ride Command Edition; Polaris General 1000 Deluxe; Polaris General 1000 Premium; Polaris General 1000; Polaris General 1000 Ride Command Edition; Polaris General 1000 Hunter Edition; Polaris General 1000 Limited Edition; Polaris General 1000 EPS; Polaris General 1000 EPS Deluxe;

1  Polaris General 1000 EPS Hunter Edition; and Polaris General 1000 EPS Ride

2  Command Edition.

3      3.      Polaris includes nice stickers like the following to suggest that their

4  vehicles meet these OSHA requirements:



7      4.      The stickers are placed on Class Vehicles and are visible at the point

8  of sale where consumers are also informed that Class Vehicles meet all applicable

9  standards and regulations, including self-adopted regulations, and meet OSHA

10  requirements of 29 C.F.R. § 1928.53, when in fact, they do not.

11      5.      None of the Class Vehicles sold by Polaris meet the OSHA

12  requirements of 29 C.F.R. § 1928.53. Polaris tells all of their customers that their

13  ROPS systems are safe because they meet this standard. They do not. Polaris has

14  also staved off federal regulations by the U.S. Consumer Product Safety

15  Commission ("CPSC") in part by causing the adoption of newly created industry

16  standards as part of the self-regulation revolution. Even after adopting farm

17  tractor standards issued for worker safety on farms in the early 1970s, Polaris

18  cheats and does not even meet those standards.

19      6.      Roof strength is a vital safety concern to consumers given the strong

20  likelihood of UTVs rolling over. The failure to meet all applicable federal and

21  state statutes, standards, regulations, and self-adopted regulations, including

22  OSHA 29 C.F.R. § 1928.53 requirements is material information for consumers

23  purchasing/leasing UTVs, such as the Class Vehicles.

24      7.      While many violations are described below with specificity, this

25  Complaint alleges violations of the statutes cited in their entirety.

26      8.      Unless otherwise stated, Plaintiffs allege that any violations by

27  Polaris were knowing and intentional, and that Polaris did not maintain procedures

28  reasonably adapted to avoid any such violation.

1    9.    Unless otherwise indicated, the use of any defendant's name in this
2    Complaint includes all agents, employees, officers, members, directors, heirs,
3    successors, assigns, principals, trustees, sureties, subrogees, representatives, and
4    insurers of that defendant's name.

5    **II.    UTVS SOLD BY POLARIS**

6    10.    A UTV is a motorized vehicle with four or more low pressure tires
7    designed for off-road use and intended by the manufacturer primarily for
8    recreational use by one or more persons. UTVs are a relatively new product in the
9    motorized off-road category, and their speed and design make them unique from
10   all-terrain vehicles ("ATV(s)"). The main distinction is that an ATV is defined by
11   federal law, in part as: any motorized, off-highway vehicle designed to travel on 3
12   or 4 wheels, having a seat designed to be straddled by the operator and handlebars
13   for steering control. 15 U.S.C. § 2089(e)(1)(A).

14   11.    A UTV, unlike an ATV, has traditional seating like an automobile
15   with bench or bucket seats, a restraint system and is equipped with a steering
16   wheel. UTVs are similar in design to golf carts with throttle and brake pedals.
17   While golf carts travel approximately 15 miles per hour or less, UTVs such as the
18   Polaris Rangers and Razors have top speeds between well in excess of 60 miles
19   per hour. Polaris UTVs are powered by strong engines with up to 181 horsepower.

20   12.    The images depicted below are from Polaris' most recent earnings
21   report and website. They show the Rangers and Razors, which do not look like
22   slow 1970s farm tractors:

 



13.     UTVs were introduced into the United States market in the late 1990s. In 1998, only 2,000 UTV s were sold, all by one manufacturer. Polaris entered the market in 2000. By 2003, 20,000 UTVs were sold in the United States. That number then grew dramatically. There was a 19% growth from calendar year 2006 over 2005 levels with approximately 255,000 UTVs sold worldwide. In its most recent second quarter of 2019 earnings report, Polaris estimated nearly 1 billion in gross sales in the quarter. Polaris possess the top spot in the North American market share ranks and have three fold lead on their nearest competitor.

14.     Polaris UTVs are sold at retail with an approximate median base price of around $12,999.99 and sell at prices exceeding $20,000.00. The price is similar to entry and midsize automobiles.

## III.   JURISDICTION AND VENUE

15.     Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs, residents of Orange County in the State of California, seek relief on

behalf of a California class, but the Defendants do not have their principal place of business in California, but Minnesota. In addition, the matter in controversy exceeds $5,000,000 exclusive of interest and costs. Therefore, both diversity jurisdiction and the damages threshold under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

16.     Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) the conduct complained of herein occurred within this judicial district; and (ii)) Defendants conducted business within this judicial district at all times relevant. Furthermore, the entity that adopted the self-regulation of 29 C.F.R. § 1928.53 is the Recreational Off-Highway Vehicle Association ("ROHVA"). That entity financed significantly by Polaris is based in Irvine, California in Orange County.

17.     Because Defendants conducted business within the State of California at all time relevant, personal jurisdiction is established.

**IV.    PARTIES**

18.     Plaintiff Paul Guzman ("Guzman") is an individual who resides in the County of Orange, State of California. Plaintiff is a member of the putative class defined herein.

19.     Plaintiff Jeremy Albright ("Albright") is an individual who resides in the County of Orange, State of California. Plaintiff is a member of the putative class defined herein.

20.     Plaintiffs are informed and believe, and upon such information and belief allege thereon, that defendant POLARIS INDUSTRIES, INC. is a Delaware Corporation with its principal place of business at 2100 Highway 55, Medina, Minnesota 55340-9770. Its agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

21.     Plaintiffs are informed and believe, and upon such information and belief allege thereon,, that defendant POLARIS SALES, INC, is a Minnesota

1   Corporation with its principal place of business at 2100 Highway 55, Medina,

2   Minnesota 55340-9770. Its agent for service of process in California is CT

3   Corporation System located at 818 West 7th Street, Suite 930, Los Angeles,

4   California 90017.

5        22.   Plaintiffs are informed and believe, and upon such information and

6   belief allege thereon, that defendant POLARIS INDUSTRIES, INC. is a

7   Minnesota Corporation with its principal place of business at 2100 Highway 55,

8   Medina, Minnesota 55340-9770. It is the parent company of both defendant

9   POLARIS INDUSTRIES, INC. the Delaware Corporation and Polaris Sales, Inc.

10  Its agent for service of process is CT Corporation System Inc., 101 Date Street N.,

11  St. Paul, Minnesota 55117-5603.

12       23.   Polaris maintains their largest and distribution center facility in

13  California. Polaris at all relevant times herein sold vehicles to members of the

14  general public as well as designing, testing, manufacturing, inspecting,

15  distributing, recalling them, and warning and instructing users on the safe use of

16  the motor vehicles, including the subject vehicle, in exchange for valuable

17  consideration in Orange County.

18       24.   The above named Defendants, and their subsidiaries and agents, are

19  collectively referred to as "Defendants." The true names and capacities of the

20  Defendants sued herein as DOE DEFENDANTS 1 through 10, inclusive, are

21  currently unknown to Plaintiffs, who therefore sue such Defendants by fictitious

22  names.  Each of the Defendants designated herein as a DOE is legally responsible

23  for the unlawful acts alleged herein.  Plaintiffs will seek leave of Court to amend

24  the Complaint to reflect the true names and capacities of the DOE Defendants

25  when such identities become known.

26       25.   Plaintiffs are informed and believe, and thereon allege, that at all

27  relevant times, each and every Defendant was acting as an agent and/or employee

28  of each of the other Defendants, and was the owner, agent, servant, joint venturer

1    and employee, each of the other and each was acting within the course and scope

2    of its ownership, agency, service, joint venture and employment with the full

3    knowledge and consent of each of the other Defendants. Plaintiffs are informed

4    and believe, and based thereon allege, that each of the acts and/or omissions

5    complained of herein was made known to, and ratified by, each of the other

6    Defendants.

7         26.    At all times mentioned herein, each and every Defendant was the

8    successor of the other and each assumes the responsibility for each other's acts

9    and omissions.

10   **V.    FACTUAL ALLEGATIONS**

11        **A.    *The Government Considers Regulations for UTVs***

12        27.    Polaris UTVs are subject to product safety standards administered by

13   the CPSC, not the National Highway Traffic Safety Administration ("NHTSA").

14   UTVs are "consumer products" that can be regulated by the CPSC via the Consumer

15   Product Safety Act. 15 U.S.C. § 2052(a).

16        28.    On December 12, 2008, the CPSC met with representatives of

17   ROVHA to discuss the development of a standard to be certified by the American

18   National Standards Institute ("ANSI"). The standards discussed, at this time,

19   involved stability standards. ROHVA then sent over in June 2009, proposed

20   voluntary standards, including one for the ROPS system. Ken D'Entremont and

21   Mary McConnell attended the meeting for Polaris. Paul Vitrano attended for

22   ROHVA.

23        29.    In 2009, the CPSC began the process of considering regulatory action

24   of UTVs. (In CPSC nomenclature they are ROVs.) It issued a Notice of Proposed

25   Rulemaking. The CPSC noted that farm vehicles have maximum speeds of 25

26   mph or less, while UTVs at the time could exceed 30 mph. The CPSC identified

27   its databases of Injury and Potential Injury Incidents (IPII) and In-Depth

28   Investigation (INDP) for incidents between January 2003 and August 2009

1   involving 181 incidents, including 116 fatalities and 152 other injuries. The

2   injuries included deglovings, fractures and crushing injuries to victims' legs, feet,

3   arms and hands, resulting in amputations at times. 69% of the injuries occurred in

4   rollover incidents.

5       30.     By April 2013, the CPSC was aware of 428 incidents resulting in 231

6   fatalities and 388 other injuries. 150 of the 231 deaths were in rollover accidents.

7       **B.     *The 1970s OSHA Regulation for ROPS on Farm Tractors***

8       31.     In 1972, the U.S. Department of Labor concerned that "[t]ractor roll-

9   overs have been a major cause of employee injury and death on the farm"

10  appointed the Standards Advisory Committee on Agriculture to make a ROPS

11  standard a priority.

12      32.     After the notice of proposed rulemaking notice period, the

13  Department of Labor, via OSHA promulgated 29 C.F.R. §§ 1928.51 (definitions),

14  1928.52 and 1928.53 (ROPS strength test).

15      33.     The test for the ROPS strength involves forces applied to the ROPS

16  system and it measures the deflection caused by the force. If there is too much

17  deflection the ROPS system fails the tests. How much force is applied, according

18  to the regulation depends on the tractor weight.

19      34.     Tractor weight is defined pursuant to 29 C.F.R. §§ 1928.51(a)(4) as:

20      "Tractor weight" includes the protective frame or enclosure, all fuels,
21      and other components required for normal use of the tractor. Ballast
        shall be added as necessary to achieve **a minimum total weight** of
22      110 lb. (50.0 kg.) per maximum power take-off horse power at the
23      rated engine speed or the maximum, gross vehicle weight specified by
        the manufacturer, **whichever is the greatest**. From end weight shall
24      be at least 25 percent of the tractor test weight. **In case power take-
25      off horsepower is not available, 95 percent of net engine flywheel
26      horsepower shall be used**.

27      35.     Thus, the weight to be tested is either the gross vehicle weight (about

28  2,000 to 2,400 pounds, or the 110 pounds multiplied by the maximum power take

off horse power. The statute specifically indicates if the tractor is not one where you can measure the "power take off" horsepower, or PTO, then 95 percent of net engine flywheel horsepower is used.

**C.      *ROHVA, a Polaris-Controlled Entity, Adopts the 29 C.F.R. § 1928.53 Test***

36.     In order to avoid CPSC promulgating actual regulations, Polaris and the industry set up new standards with which they would comport. One of these was for the strength of the ROPS system. This was done via ROHVA, which is controlled, in part by Polaris. ROHVA adopted the tractor ROPS test of 29 C.F.R. §§ 1928.51, *et seq.*, This was then made into an ANSI standard.

**D.      *Polaris Cheats and None of the Class Vehicles Passes the 29 C.F.R. § 1928.53 Test***

37.     The Class Vehicles consisting of 2015 to 2019 Polaris UTVs are believed to have horsepower ranging from approximately 168 horsepower to 68 horsepower for the smaller 2-door Rangers.

38.     For every model of Class Vehicles, Polaris tested the vehicles by the gross vehicle weight. Polaris intentionally refused to test at 110 pounds times either the maximum power take off horsepower or 95% of the net engine flywheel horsepower. For example, the 2019 RZR XP 4 Turbo is tested at 2750 pounds (the gross vehicle weight is 2713 pounds). It has 168 horsepower. 95% of 168 horsepower is 159.6. Rounding down, would be 159. So, 110 pounds multiplied by 159 is 17,490. The correct "W" or tractor weight in the test, should be 17,490 pounds. Polaris intentionally refused to use the correct tractor weight of approximately 17,490 pounds. Instead, it used 2,750 pounds. Polaris did not comply with the test. Polaris misled all Class members.

///

///

///

39.     The Polaris vehicles are lighter and have much stronger engines than farm tractors. Hence, their gross vehicle weights are comparatively lower, and 110 pounds times their PTO horsepower (or 95% of the net fly wheel horsepower) is going to be larger than that of the farm tractors.

40.     In fact, the gross vehicle weight, due the specifications of the Class Vehicles should never be used for the OSHA tests. 110 pounds times the PTO horsepower (or 95% of the net fly wheel horsepower) of each Class Vehicle is substantially greater than the gross vehicle weights.

41.     Not a single Class Vehicle has been tested using the proper Tractor Weight pursuant to 29 C.F.R. §§ 1928.51, *et seq.*, Polaris advertised and told the public that each and every Class Vehicle passed the OSHA 29 C.F.R. § 1928.53 test. None did.

42.     In failing to provide consumers accurate and truthful information about the true nature and characteristics of the Class Vehicles pertaining to compliance with all applicable federal and state statutes, standards, and regulations, including self-adopted regulations, specifically OSHA requirements of 29 C.F.R. § 1928.53, consumers are damaged based on the benefit of the bargain, that they have to retrofit the Class Vehicles for adequate safety, and are faced with a strong likelihood of serious injury or death.

43.     Polaris is believed to have digital computer models of the ROPS system that can be inputted into commercially available computer aided engineering programs. They test the ROPS system via an outside entity and using the computer aided engineering systems. It would be easy to ascertain whether the ROPS system meet the tests by inputting the correct Tractor Weight instead of the lower gross vehicle weight.

**E.     *Plaintiffs' Transactions***

44.     On or around February 29, 2016, Albright purchased a 2016 Polaris RZR XP in Orange County, California.

1    45.    Albright saw and read the stickers on the 2016 Polaris RZR XP as

2    depicted below:



46.    Based on Albright's employment experience in the construction

industry, he understood that OSHA requirements were federal regulations

pertaining to safety. Albright read the sticker on the 2016 Polaris RZR XP and

understood the language to mean that the vehicle's ROPS structure met federal

standards for safety and that the vehicle was safe for use by him, his family, and

friends. Albright, in seeing and reading the sticker, relied on the language

contained therein to purchase the 2016 Polaris RZR XP. If the sticker said that the

ROPS structure failed to meet OSHA requirements, he would not have purchased

the 2016 Polaris RZR XP.

47.    Had the sticker not been on the 2016 Polaris RZR XP that stated that

the ROPS structure met OSHA requirements, Albright would not have purchased

the 2016 Polaris RZR XP.

48.    In or around November 2018, Guzman purchased a 2018 Polaris

RZR XP in Orange County, California.

///

///

///

///

49.    Guzman saw and read the stickers on the 2018 Polaris RZR XP as depicted below:



50.    Based on Guzman's employment experience in the construction industry, he understood that OSHA requirements were federal regulations pertaining to safety. Guzman read the sticker on the 2018 Polaris RZR XP and understood the language to mean that the vehicle's ROPS structure met federal standards for safety and that the vehicle was safe for use by him, his family, and friends. Guzman, in seeing and reading the sticker, relied on the language contained therein to purchase the 2018 Polaris RZR XP. If the sticker said that the ROPS structure failed to meet OSHA requirements, he would not have purchased the 2018 Polaris RZR XP.

51.    Had the sticker not been on the 2018 Polaris RZR XP that stated that the ROPS structure met OSHA requirements, Guzman would not have purchased the 2018 Polaris RZR XP.

52.    Both of Plaintiffs' Polaris vehicles contained the stickers at the time of sale as depicted below, suggesting that their vehicles meet these OSHA requirements:

///

///

///

///

53.     The stickers placed on Plaintiffs' Polaris vehicles as well as Class Vehicles and are visible at the point of sale where consumers are also informed that Class Vehicles meet all applicable standards and regulations, including self-adopted regulations, and meet OSHA requirements of 29 C.F.R. § 1928.53, when in fact, they do not.

54.     None of the Class Vehicles sold by Polaris meet the OSHA requirements of 29 C.F.R. § 1928.53. Polaris tell all of their customers that their ROPS systems are safe because they meet this standard. They do not. **They do not test the with the proper engine power in determining the vehicle weight**.

55.     But for Defendants' misrepresentations, misleading and fraudulent statements, Plaintiffs would not have purchased the vehicles or would have paid substantially less for the vehicles than the purchase price of upwards of $20,000.00 each. Plaintiffs did not receive the benefit of the bargain.

56.     In failing to provide consumers accurate and truthful information about the true nature and characteristics of the Class Vehicles pertaining to compliance with all applicable federal and state statutes, standards, and regulations, including self-adopted regulations, specifically OSHA requirements of 29 C.F.R. § 1928.53, consumers are damaged based on the benefit of the bargain, that they have to retrofit the Class Vehicles for adequate safety, and are faced with a strong likelihood of serious injury or death.

## VI.     CLASS ALLEGATIONS

57.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure and/or other applicable law, on behalf of themselves and all others similarly situated, as members of the proposed class (hereafter "the Class") defined as follows:

> All persons in California that purchased a Class Vehicle
> in the four years preceding the filing of this Complaint.

///

58.     Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class are any judges, justices or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

59.     Plaintiffs do not know the exact number of persons in the Class, but believe them to be in the several hundreds, if not thousands, making joinder of all these actions impracticable.

60.     The identity of the individual members is ascertainable through Defendants' and/or Defendants' agents' records or by public notice.

61.     There is a well-defined community of interest in the questions of law and fact involved affecting the members of the Class.

62.     Plaintiffs will fairly and adequately protect the interest of the Class.

63.     Plaintiffs retained counsel experienced in consumer class action litigation.

64.     Plaintiffs' claims are typical of the claims of the Class, which all arise from the same operative facts involving Defendants' practices.

65.     A class action is a superior method for the fair and efficient adjudication of this controversy.

66.     Class-wide damages are essential to induce Defendants to comply with the federal and state laws alleged in the Complaint.

67.     Class members are unlikely to prosecute such claims on an individual basis since the individual damages are small. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims, e.g., securities fraud.

68.     Plaintiffs and the Class seek injunctive relief against Defendants to preclude Defendants from advertising that the Class Vehicles comply with OSHA

29 C.F.R. § 1928.53 until they meet the tests using the correct Tractor Weight as defined in 29 C.F.R. § 1928.51(a)(4).

69.     On April 6, 2017 in *McGill v. Citibank, N.A.*, 2 Cal.5th 945 (2017), the California Supreme Court ruled that any contract that waives the statutory remedy of public injunctive relief under the Unfair Competition Law, False Advertising Law, and Consumers Legal Remedies Act is contrary to California public policy and this unenforceable under California law. Plaintiffs and the Class seek injunctive relief under the Unfair Competition Law, Cal. *Bus. & Prof. Code* §§ 17200, *et seq.* due to Defendants' violation of the False Advertising Law, Consumer Legal Remedies Act, Breach of Express Warranty, and Breach of Implied Warranty based on Defendants' unlawful, unfair, and fraudulent business practices and misleading advertisements that the Class Vehicles meet all applicable federal and state statutes, standards, regulations, including OSHA requirements of 29 C.F.R § 1928.53. Plaintiffs and the Class seek to enjoin Defendants' illegal business practices of advertising and informing consumers that the Class Vehicles meet all applicable federal and state statutes, standards, regulations, including OSHA requirements of 29 C.F.R § 1928.53, when they in fact, do not.

70.     As such, Plaintiffs and the Class seek public injunctive relief to prevent Defendants from continuing with their unlawful business acts and practices as alleged herein to ensure that Defendants do not continue to harm the general public by continuing to engage in the unlawful business acts and practices as alleged herein.

71.     Plaintiffs, individually, and on behalf of all California consumers, seek individual, representative, and public injunctive relief and any necessary order or judgments that will prevent Defendants from continuing with their unlawful business acts and practices as alleged herein.

///

72.     Defendants acted on grounds generally applicable to the Class thereby making appropriate final declaratory relief with respect to the Class as a whole.

73.     Members of the Class are likely to be unaware of their rights.

74.     Plaintiffs contemplate providing notice to the putative class members by direct mail in the form of a postcard and via publication.

75.     Plaintiffs request certification of a hybrid class combining the elements of Fed. R. Civ. P. 23(b)(3) for monetary damages and Fed. R. Civ. P. 23(b)(2) for equitable relief.

76.     This action is properly maintainable as a class action. This action satisfies the numerosity, typicality, adequacy, predominance and superiority requirements for a class action.

77.     **Numerosity**:  The proposed Class is so numerous that individual joinder of all members is impracticable. Due to the nature of the trade and commerce involved, Plaintiffs do not know the number of members in the Class, but believe the Class members number in the thousands, if not more. Plaintiffs allege that the Class may be ascertained by the records maintained by Defendants.

78.     Plaintiffs and members of the Class were harmed by the acts of Defendants in at least the following ways:  violation of California's Consumers Legal Remedies Act, Cal. *Civ. Code* §§ 1770(a)(5), (a)(7), (a)(9), (a)(13), (a)(14) and (a)(19); violations of California's Unfair Competition Law and False Advertising Law; fraudulent concealment; violations of the Song-Beverly Act for breach of the express warranties as well as implied warranties; and breach of the implied warranty of merchantability.

79.     **Commonality**: There are questions of law and fact common to Plaintiffs and the Class that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, without limitation:

i.      Whether Defendants failed to test the Class Vehicles using the correct Tractor Weight as defined by 29 C.F.R. § 1928.51(a)(4);

ii.     Whether Defendants violated Cal. Civ. Code §§ 1770, *et seq.*;

iii.    Whether Defendants' practices are "unfair" as defined by Cal. *Bus. & Prof. Code* §§ 17200, *et seq.*;

iv.     Whether Defendants' practices are "illegal" as defined by Cal. *Bus. & Prof. Code* §§ 17200, *et seq.*;

v.      Whether Defendants' practices are "fraudulent" as defined by Cal. *Bus. & Prof. Code* §§ 17200, *et seq.*;

vi.     Whether such practices violate Cal. *Bus. & Prof. Code* §§ 17200, *et seq.*;

vii.    Whether Defendants violated Cal. *Bus. & Prof. Code* §§ 17500, *et seq.*;

viii.   Whether Plaintiffs and Class Members are entitled to restitution under Cal. *Bus. & Prof. Code* § 17200-17203;

ix.     Whether Plaintiffs and Class Members are entitled to declaratory/injunctive relief under Cal. *Bus. & Prof. Code* § 17535;

x.      Whether Plaintiffs and Class Members are entitled to attorneys' fees and costs under Cal. *Code Civ. Proc.* § 1021.5; and

xi.     Whether Plaintiffs and Class Members are entitled to statutory damages.

80.     **Typicality**:  Plaintiffs' claims are typical of the claims of members of the Class, as Plaintiff s were subject to the same common course of conduct by Defendants as all Class members. The injuries to each member of the Class were caused directly by Defendants' wrongful conduct as alleged herein.

81.     **Adequacy of Representation**:  Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs retained counsel with substantial experience in handling complex class action litigation and litigation

against product manufacturers. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class, and have financial resources to do so.

82.   **Superiority of Class Action**: A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Class members have little interest in individually controlling the prosecution of separate actions because the individual damage claims of each Class member are not substantial enough to warrant individual filings. In sum, for many if not most Class members, a class action is the only feasible mechanism that will allow them an opportunity for legal redress and justice. The conduct of this action as a class action in this forum, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

83.   Moreover, individualized litigation would also present the potential for varying, inconsistent, or incompatible standards of conduct for Defendants, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. The adjudication of individual Class members' claims would also, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other Class members to protect their interests.

84.   Plaintiffs and the members of the Class have suffered and will continue to suffer harm as a result of Defendants' unlawful and wrongful conduct. Defendants have acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with regard to the members of the Class as a whole.

///

# VII.   CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT,
### CAL. *CIV. CODE* §§ 1750, *ET SEQ.*

**(Against All Defendants on Behalf of Plaintiff Paul Guzman and the Class)**

85.     Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

86.     The California Consumers Legal Remedies Act (the "CLRA"), Cal. *Civ. Code* §§ 1770, *et seq.*, was enacted to protect consumers against unfair and deceptive business practices. It creates a non-exclusive statutory remedy for unfair methods of competition and unfair or deceptive acts or business practices. Its self-declared purpose is to protect consumers against these unfair and deceptive business practices, and to provide efficient and economical procedures to secure such protection. Cal. *Civ. Code* § 1760. The CLRA was designed to be liberally construed and applied in favor of consumers to promote its underlying purposes. *Id*. The CLRA applies to Defendants' acts and practices described herein because it extends to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to Plaintiffs and others similarly situated.

87.     The Class Vehicles are a "good" within the meaning of Cal. *Civ. Code* § 1761(a), and the transactions/agreements are "transactions" within the meaning of Cal. *Civ. Code* § 1761(e).

88.     Plaintiffs and Class Members are "consumers" within the meaning of Cal. *Civ. Code* § 1761(d). Plaintiff and Class Members and Defendants are "persons" within the meaning of Cal. *Civ. Code* § 1761(c).

89.     The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices," including but not limited to:

(a)   Cal. *Civ. Code* § 1770(a)(5) "Representing that goods or services haves sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have";

(b)   Cal. *Civ. Code* § 1770(a)(7) "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another";

(c)   Cal. *Civ. Code* § 1770(a)(9) "Advertising goods or service with intent not to sell them as advertised";

(d)   Cal. *Civ. Code* § 1770(a)(13) "Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions";

(e)   Cal. *Civ. Code* § 1770(a)(14) "Represent that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law";

(f)   Cal. *Civ. Code* § 1770(a)(16) "Represent that the subject of a transaction has been supplied in accordance with a previous representation when it has not"; and

(g)   Cal. *Civ. Code* § 1770(a)(19) "Inserting an unconscionable provision in the contract.

90.   Any waiver by Plaintiffs and Class Members of the provisions of the CLRA is contrary to public policy and is unenforceable and void under Cal. *Civ. Code* § 1751.

91.   Polaris includes nice stickers like the following to suggest that their vehicles meet these OSHA requirements:



92.     The stickers are placed on Class Vehicles and are visible at the point of sale where consumers are also informed that Class Vehicles meet all applicable standards and regulations, including self-adopted regulations, and meet OSHA requirements of 29 C.F.R. § 1928.53, when in fact, they do not.

93.     In or around November 2018, Guzman purchased a 2018 Polaris RZR XP in Orange County, California.

94.     Guzman saw and read the stickers on the 2018 Polaris RZR XP as depicted below:



95.     Based on Guzman's employment experience in the construction industry, he understood that OSHA requirements were federal regulations pertaining to safety. Guzman read the sticker on the 2018 Polaris RZR XP and understood the language to mean that the vehicle's ROPS structure met federal standards for safety and that the vehicle was safe for use by him, his family, and friends. Guzman, in seeing and reading the sticker, relied on the language contained therein to purchase the 2018 Polaris RZR XP. If the sticker said that the ROPS structure failed to meet OSHA requirements, he would not have purchased the 2018 Polaris RZR XP.

96.     Had the sticker not been on the 2018 Polaris RZR XP that stated that the ROPS structure met OSHA requirements, Guzman would not have purchased the 2018 Polaris RZR XP.

97.     None of the Class Vehicles sold by Polaris meet the OSHA requirements of 29 C.F.R. § 1928.53. Polaris tell all of their customers that their ROPS systems are safe because they meet this standard. They do not.

98.     In failing to provide consumers accurate and truthful information about the true nature and characteristics of the Class Vehicles pertaining to compliance with all applicable federal and state statutes, standards, and regulations, including self-adopted regulations, specifically OSHA requirements of 29 C.F.R. § 1928.53, consumers are damaged based on the benefit of the bargain, that they have to retrofit the Class Vehicles for adequate safety, and are faced with a strong likelihood of serious injury or death.

99.     On or about August 9, 2019, Plaintiff provided Defendants with written notice of his claims, via U.S. certified mail, return receipt requested, and demanded that, within 30 days, Defendants correct, repair, replace or other rectify the acts and practices complained of herein pursuant to Section 1770 of the CLRA. Defendants failed to do so or agree to do so and expressly stated they would not change their illegal practices within 30 days of August 9, 2019. Therefore Plaintiff now seeks damages for such deceptive practices pursuant to Cal. *Civ. Code* § 1782.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW, CAL. *BUS. & PROF. CODE* §§ 17200, *ET SEQ.*)

### (Against All Defendants on Behalf of All Plaintiffs and the Class)

100.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

101.   The California Unfair Competition Law, Cal. *Bus. & Prof. Code* §§ 17200, *et seq*., ("UCL") prohibits any unlawful, unfair or fraudulent business act or practice.

///

///

///

102.   Albright saw and read the stickers on the 2016 Polaris RZR XP as depicted below:



103.   Based on Albright's employment experience in the construction industry, he understood that OSHA requirements were federal regulations pertaining to safety. Albright read the sticker on the 2016 Polaris RZR XP and understood the language to mean that the vehicle's ROPS structure met federal standards for safety and that the vehicle was safe for use by him, his family, and friends. Albright, in seeing and reading the sticker, relied on the language contained therein to purchase the 2016 Polaris RZR XP. If the sticker said that the ROPS structure failed to meet OSHA requirements, he would not have purchased the 2016 Polaris RZR XP.

104.   Had the sticker not been on the 2016 Polaris RZR XP that stated that the ROPS structure met OSHA requirements, Albright would not have purchased the 2016 Polaris RZR XP.

105.   In or around November 2018, Guzman purchased a 2018 Polaris RZR XP in Orange County, California.

///

///

///

///

///

106.  Guzman saw and read the stickers on the 2018 Polaris RZR XP as depicted below:



107.  Based on Guzman's employment experience in the construction industry, he understood that OSHA requirements were federal regulations pertaining to safety. Guzman read the sticker on the 2018 Polaris RZR XP and understood the language to mean that the vehicle's ROPS structure met federal standards for safety and that the vehicle was safe for use by him, his family, and friends. Guzman, in seeing and reading the sticker, relied on the language contained therein to purchase the 2018 Polaris RZR XP. If the sticker said that the ROPS structure failed to meet OSHA requirements, he would not have purchased the 2018 Polaris RZR XP.

108.  Had the sticker not been on the 2018 Polaris RZR XP that stated that the ROPS structure met OSHA requirements, Guzman would not have purchased the 2018 Polaris RZR XP.

*UNLAWFUL*

109.  Defendants committed "unlawful" business acts and practices by engaging in conduct that violates the CLRA, Cal. *Civ. Code* §§ 1770(a)(5), (a)(7), (a)(9), (a)(13), (a)(14) and (a)(19) as well as California's False Advertising Law.

110.  Such conduct is ongoing and continues to this date and violates the unlawful prong of the UCL.

///

///

///

1

*FRAUDULENT*

2      111.   In order to prevail under the "fraudulent" prong of the UCL, a

3  consumer must allege that the fraudulent business practice was likely to deceive

4  members of the public.

5      112.   The test for "fraud" as contemplated by Cal. *Bus. & Prof. Code* §§

6  17200, *et seq*. is whether the public is likely to be deceived. Unlike common law

7  fraud, a UCL violation can be established even if no one was actually deceived,

8  relied upon the fraudulent practice, or sustained any damage.

9      113.   Polaris includes nice stickers like the following to suggest that their

10  vehicles meet these OSHA requirements:

11

12



13      114.   The stickers are placed on Class Vehicles and are visible at the point

14  of sale where consumers are also informed that Class Vehicles meet all applicable

15  standards and regulations, including self-adopted regulations, and meet OSHA

16  requirements of 29 C.F.R. § 1928.53, when in fact, they do not.

17      115.   None of the Class Vehicles sold by Polaris meet the OSHA

18  requirements of 29 C.F.R. § 1928.53. Polaris tell all of their customers that their

19  ROPS systems are safe because they meet this standard. They do not.

20      116.   Defendants fraudulently informed Plaintiffs and the Class that the

21  Class Vehicles passed the OSHA 29 C.F.R. § 1928.53 test when Polaris used the

22  inappropriate gross vehicle weight instead of 110 pounds multiplied by either the

23  maximum power take off horsepower of 95% of the net flywheel horsepower,

24  which would be between four and nearly seven times a greater force for the test.

25  This induced Plaintiffs and other class members to purchase the Class Vehicles at

26  inflated prices based on those misrepresentations.

27      117.   In failing to provide consumers accurate and truthful information

28  about the true nature and characteristics of the Class Vehicles pertaining to

1   compliance with all applicable federal and state statutes, standards, and

2   regulations, including self-adopted regulations, specifically OSHA requirements

3   of 29 C.F.R. § 1928.53, consumers are damaged based on the benefit of the

4   bargain, that they have to retrofit the Class Vehicles for adequate safety, and are

5   faced with a strong likelihood of serious injury or death.

6        118.   Thus, Defendants' conduct has violated the "fraudulent" prong of

7   Cal. *Bus. & Prof. Code* § 17200.

8        119.   Such conduct is ongoing and continues to this date and violates the

9   fraudulent prong of the UCL.

10  120.   On April 6, 2017 in *McGill v. Citibank, N.A.*, 2 Cal.5th 945 (2017), the

11  California Supreme Court ruled that any contract that waives the statutory remedy

12  of public injunctive relief under the Unfair Competition Law, False Advertising

13  Law, and Consumers Legal Remedies Act is contrary to California public policy

14  and this unenforceable under California law. Plaintiffs and the Class seek

15  injunctive relief under the Unfair Competition Law, Cal. *Bus. & Prof. Code* §§

16  17200, *et seq.* due to Defendants' violation of the False Advertising Law,

17  Consumer Legal Remedies Act, Breach of Express Warranty, and Breach of

18  Implied Warranty based on Defendants' unlawful, unfair, and fraudulent business

19  practices and misleading advertisements that the Class Vehicles meet all

20  applicable federal and state statutes, standards, regulations, including OSHA

21  requirements of 29 C.F.R § 1928.53. Plaintiffs and the Class seek to enjoin

22  Defendants' illegal business practices of advertising and informing consumers that

23  the Class Vehicles meet meet all applicable federal and state statutes, standards,

24  regulations, including OSHA requirements of 29 C.F.R § 1928.53, when they in

25  fact, do not.

26       121.   As such, Plaintiffs and the Class seek public injunctive relief to

27  prevent Defendants from continuing with their unlawful business acts and

28  practices as alleged herein to ensure that Defendants do not continue to harm the

1  general public by continuing to engage in the unlawful business acts and practices

2  as alleged herein.

3      122.   Plaintiffs, individually, and on behalf of all California consumers,

4  seek individual, representative, and public injunctive relief and any necessary

5  order or judgments that will prevent Defendants from continuing with their

6  unlawful business acts and practices as alleged herein.

7      123.   Plaintiffs seek declaratory relief, restitution and disgorgement of all

8  profits obtained, and public injunctive relief as previously described.

9                    **THIRD CAUSE OF ACTION**

10     **VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW,**

11        **CAL. *BUS. & PROF. CODE* §§ 17500, *ET SEQ.***

12  **(Against All Defendants on Behalf of Plaintiff Paul Guzman and the Class)**

13     124.   Plaintiff hereby incorporates by reference and re-alleges each and

14  every allegation set forth in each and every preceding paragraph of this

15  Complaint, as though fully set forth herein.

16     125.   Pursuant to the California False Advertising Law, Cal. *Bus. & Prof.*

17  *Code* §§ 17500, *et seq.*, ("FAL") it is unlawful to engage in advertising "which is

18  untrue or misleading, and which is known, or which by the exercise of reasonable

19  care should be known, to be untrue or misleading."

20     126.   Defendants caused to be made or disseminated through California

21  and the United States, through advertising, marketing and other publications,

22  statements that were untrue or misleading, including statements on the stickers on

23  Class Vehicles and in nationally distributed print and video advertisements that

24  the Class Vehicles were passed the OSHA 29 C.F.R. § 1928.53 test. These

25  statements were known, or which by the exercise of reasonable care should have

26  been known, to Defendants to be untrue and misleading to consumers, including

27  Plaintiffs and the other Class Members.

28  ///

1   127.   In or around November 2018, Guzman purchased a 2018 Polaris

2   RZR XP in Orange County, California.

3   128.   Guzman saw and read the stickers on the 2018 Polaris RZR XP as

4   depicted below:



10   129.   Based on Guzman's employment experience in the construction

11   industry, he understood that OSHA requirements were federal regulations

12   pertaining to safety. Guzman read the sticker on the 2018 Polaris RZR XP and

13   understood the language to mean that the vehicle's ROPS structure met federal

14   standards for safety and that the vehicle was safe for use by him, his family, and

15   friends. Guzman, in seeing and reading the sticker, relied on the language

16   contained therein to purchase the 2018 Polaris RZR XP. If the sticker said that the

17   ROPS structure failed to meet OSHA requirements, he would not have purchased

18   the 2018 Polaris RZR XP.

19   130.   Had the sticker not been on the 2018 Polaris RZR XP that stated that

20   the ROPS structure met OSHA requirements, Guzman would not have purchased

21   the 2018 Polaris RZR XP.

22   131.   Polaris includes nice stickers like the following to suggest that their

23   vehicles meet these OSHA requirements:

24

25

26   ///

27   ///

28   ///

132.   The stickers are placed on Class Vehicles and are visible at the point of sale where consumers are also informed that Class Vehicles meet all applicable standards and regulations, including self-adopted regulations, and meet OSHA requirements of 29 C.F.R. § 1928.53, when in fact, they do not.

133.   None of the Class Vehicles sold by Polaris meet the OSHA requirements of 29 C.F.R. § 1928.53. Polaris tell all of their customers that their ROPS systems are safe because they meet this standard. They do not.

134.   In failing to provide consumers accurate and truthful information about the true nature and characteristics of the Class Vehicles pertaining to compliance with all applicable federal and state statutes, standards, and regulations, including self-adopted regulations, specifically OSHA requirements of 29 C.F.R. § 1928.53, consumers are damaged based on the benefit of the bargain, that they have to retrofit the Class Vehicles for adequate safety, and are faced with a strong likelihood of serious injury or death.

135.   As a direct and proximate result of Defendants' misleading and false advertising, Plaintiffs and the other Class Members have suffered injury in fact and have lost money or property. Plaintiffs reasonably relied upon Defendants' representations regarding the Class Vehicles. In reasonable reliance on Defendants' false advertisements, Plaintiffs and other Class Members purchased, owned or leased Class Vehicles. In turn, Plaintiffs and other Class Members were have suffered injury in fact.

136.   The misleading and false advertising described herein presents a continuing threat to Plaintiffs and the Class Members in that Defendants persist and continue to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.  Defendants' conduct will continue to cause irreparable injury to consumers unless enjoined or restrained.  Plaintiffs are entitled to preliminary and permanent injunctive relief ordering Defendants to cease their false advertising, as well as disgorgement and restitution to Plaintiffs

and all Class Members, Defendants' revenues associated with their false

advertising, or such portion of those revenues as the Court may find equitable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for

relief and judgment as follows:

1. Certifying the Class as requested herein;

2. Providing such further relief as may be just and proper.

3. Appointing Plaintiffs and their counsel to represent the Class;

In addition, Plaintiffs, and the Class Members pray for further judgment as

follows:

4. Restitution of the funds improperly obtained by Defendants;

5. Any and all statutory enhanced damages;

6. All reasonable and necessary attorneys' fees and costs provided by

statute, common law or the Court's inherent power;

7. For equitable and injunctive relief, including public injunctive relief;

and

8. Any and all other relief that this Court deems just and proper.

Dated:  March 3, 2020                              Respectfully submitted,

By:  */s/ John P. Kristensen*

John P. Kristensen (SBN 224132)
**KRISTENSEN WEISBERG, LLP**

Todd M. Friedman, Esq. (SBN 216752)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C**.

Christopher W. Wood (SBN 193955)
**DREYER BABICH BUCCOLA WOOD
CAMPORA, LLP**

*Attorneys for Plaintiffs and all other
similarly situated*

1

**<u>DEMAND FOR JURY TRIAL</u>**

2

Plaintiffs hereby demand a trial by jury for all such triable claims.

3

4
Dated:  March 3, 2020                    Respectfully submitted,

5
                                    By:  */s/ John P. Kristensen*

6

7
                                         John P. Kristensen (SBN 224132)
                                         **KRISTENSEN WEISBERG, LLP**

8

9
                                         Todd M. Friedman, Esq. (SBN 216752)
                                         **LAW OFFICES OF TODD M. FRIEDMAN, P.C**.

10

11
                                         Christopher W. Wood (SBN 193955)
                                         **DREYER BABICH BUCCOLA WOOD**

12
                                         **CAMPORA, LLP**

13
                                         ***Attorneys for Plaintiffs and all other***
                                         ***similarly situated***

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I certify that on Tuesday, March 03, 2020, a true and correct copy of the attached **SECOND AMENDED COMPLAINT** was served electronically via CM/ECF on each participant of record, including counsel for Defendants listed below.

David A. Klein
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900
*david.klein@kirkland.com*

Andrew Bloomer
Paul Collier
R. Allan Pixton
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
*andrew.bloomer@kirkland.com*
*paul.collier@kirkland.com*
*allan.pixton@kirkland.com*

**Counsel for Defendants**

*/s/ John P. Kristensen*
John P. Kristensen